THE BOARD OF CHOSEN FREEHOLDERS OF HUDSON COUNTY, DEFENDANT IN ERROR, v. JAMES C. CLARKE, PLAINTIFF IN ERROR.

Submitted July 9, 1900—Decided November 19, 1900.

1. The fact that the classification in a statute is based upon a description of the counties, to which it applies as "counties of the first class," will not make it a general act unless it would have been general if the classification were based upon "counties now or hereafter having a population exceeding one hundred and fifty thousand inhabitants." A classification which would be illusory when based upon population, definitely stated, is equally so when created by reference to a classification act.

2. The Classification act is simply a method of convenient reference to population, by referring to such act instead of designating, in the statute itself, the population of the counties or municipalities to which it is to apply.

3. Legislation which classifies municipalities in the matter of their structure, machinery and powers, on a basis of population, where population has reasonable relation to the necessities of the municipalities so classified as contra-distinguished from others not similarly circumstanced, is good.

4. The courts will not interfere with the classification made by the legislature unless it is apparent that it is illusory.

5. It is within the power of the legislature to fix by statute that certain officials, of a specified class, shall be paid by salaries or fees, of a greater or less amount than that paid to others of the same class, where the natural conditions indicated by the population and the services required made it apparent that a different method of compensation should be observed, or a different amount of compensation should be paid, and would be just, in the case of the one class as contra-distinguished from that of the other.

6. Such a classification has substance, is fair and just to the official and in the interests of the public, is not illusory, and will be sustained.

7. Applying these tests to the act of April 2d, 1898, challenged in this case, we do not find that it in any way violates article 4, section 7, paragraph 11, of the state constitution, and the judgment of the Circuit Court is affirmed.

On error to the Circuit Court of the county of Hudson.

For the plaintiff in error, *McDermott & Fisk* and *Joseph Coult.*

For the defendant in error, *John Griffin.*

The opinion of the court was delivered by

FORT, J. James C. Clarke, the plaintiff in error in this case, was elected to the office of register of deeds and mortgages of the county of Hudson at the general election held in that county in the year 1899, and assumed the duties of said office on the 9th day of April, 1900.

In 1898 the legislature of this state passed an act entitled "An act respecting the fees of surrogates, county clerks and county registers of deeds and mortgages in counties of the first class and providing salaries for said officers." This

statute was approved by the governor April 2d, 1898. *Pamph. L., p.* 226.

It was provided by the fifth section of the act that all acts and parts of acts inconsistent therewith should be repealed and that the act should take effect, as to the officers to which it applied, at the expiration of the office of the present surrogates, county clerks and registers of deeds and mortgages, respectively.

The plaintiff in error was not in office at the time of the passage of the act, but assumed office upon the expiration of the term of his predecessor, who was in office at the time the act was passed, hence if, in other respects, the act is valid, it is applicable to the plaintiff in error. Prior to the passage of this act, in all the counties in this state, by general statute and by long-recognized practice, the fees attached to the offices of surrogate, county clerk and register of deeds, in the several counties of the state, went to, and were received by, the officers holding such offices individually for their own uses and purposes. The act of April 2d, 1898, had for its purpose the abolition of the fee system in counties of the first class, that is, counties containing a population exceeding one hundred and fifty thousand inhabitants; and it established a system by which the fees, from the time the act became operative in any county, should be paid into the county treasury and the officer be compensated by a fixed salary, stated in the act at $7,500, to be paid by the county collectors of the respective counties to which the act applies, in equal monthly payments, in full compensation for all services rendered by such officers, to be "in lieu of all fees and other compensation whatever heretofore provided or allowed by law," and said act provides for the selection, by such officers, of the necessary deputies and assistants in their said offices, who shall be entitled to receive such compensation as shall be approved by the board of chosen freeholders of their respective counties, to be paid monthly by the proper disbursing officers of such counties, &c.; and it is enacted by the first section of the act that all fees payable by law for any acts done or services rendered in connection with any of said offices shall

continue to be payable and shall be received and collected by said surrogates, clerks and registers, respectively, for the sole use of their respective counties as public moneys belonging to said counties, and shall be accounted for by said surrogates, clerks and registers of deeds and paid over as by the statute it is provided.

By the second section of the act said surrogates, clerks and registers are required to keep account of all fees and moneys received by them for the use of the county, and the statute expressly declares that they "shall, on or before the 15th day of each month, make a full and itemized statement and return, verified by oath, to the county collectors of their respective counties of the fees, costs, allowances, percentages and all perquisites of whatever kind received by them, or by any assistant or other person in their office or employment, for any act done or service rendered in connection with said office, and all sums which may have been charged or taxed or which shall have accrued or become payable for any such service during the month preceding the making of said statement." Such statements are required to be made under oath and filed in the office of the county collectors, to remain public records, and it is made the duty of the county auditor to audit such statements, and then the statue proceeds as follows: "And, on or before the 20th day of each month, the said surrogates and county clerks and the said registers of deeds and mortgages shall, respectively, pay over the amount of such fees and moneys to the county collectors of their respective counties, under penalty of $100 for each day's neglect to file such certificate or pay over such money, to be recovered in the name of the board of chosen freeholders of such county where said default shall occur, for the use of said county, in an action upon contract in the Supreme Court or in the Circuit Court of said county."

The declaration in the case here under review is founded upon the clause last quoted, and is a suit, by the plaintiff in error against the defendant in error, to recover the sum of $100 as and for the penalty provided by law for the default of the plaintiff in error in failing to make a statement and

return and file the same with the collector of the county, duly verified by his oath, as required by law, of the fees, costs, &c., received by him in his said office, or by the assistants in said office, for any acts done or services rendered in connection with his said office for the month ending May 15th, 1900.

The declaration also contains the common counts. The general issue was pleaded. The suit was tried before the circuit judge of Hudson county, without a jury, by consent of the parties. A judgment was given in favor of the plaintiff for $100 and costs of suit. It is that judgment which is here for review.

The defence below and the argument here is placed upon a single ground, viz., that the act of April 2d, 1898, is unconstitutional in that it is contrary to article 4, section 7, paragraph 11, of the constitution of this state, as it is amended, in that it is a "private, local and special law, regulating the internal affairs of counties," and therefore wholly inoperative and void, and that the plaintiff in error cannot be required by virtue of said act of April 2d, 1898, to account to the collector for the fees so received by him, for the reason that if said act is void, because in conflict with said provision of the constitution, he, under the law applicable to his office, is entitled to have and receive said fees to his own use. Is the act local and special? Its title clearly limits its operative force to counties of the first class, and by the act for the classification of counties, counties of the first class are fixed as such counties only as have within their territorial limits, as shown by any federal or state census, a population exceeding one hundred and fifty thousand inhabitants. *Pamph. L.* 1883, *p.* 20; *Gen. Stat., p.* 420.

The fact that the classification in this statute is by the description of counties of the first class, will not make the act general, unless it would be general if the description were that the act was only applicable to counties in this state now or hereafter having a population exceeding one hundred and fifty thousand inhabitants, as shown by any federal or state census. *Warner* v. *Hoagland,* 22 *Vroom* 62; *In re Sewer Assessments for Passaic,* 25 *Id.* 156.

If a classification would be illusory if it were based upon population definitely stated, it is equally illusory if based upon reference to the Classification act of cities or counties. The Classification act is simply a method of convenient reference to counties by population, by referring to such act instead of designating in the statute itself the population of the counties or municipalities to which it is to apply. The plaintiff in error in this case relies largely upon the case of *Freeholders of Passaic* v. *Stevenson,* 17 *Vroom* 173, which declared as unconstitutional and void within the provision of the constitution here claimed to be violated, an act which regulated the compensation of prosecutors of the pleas in certain counties of this state. The title of that act was an "Act to provide for the payment of fixed annual salaries to the several prosecutors of the pleas in this state," and it was approved March 12th, 1880. *Pamph. L., p.* 231. A careful reading of that statute and the opinion of Mr. Justice Van Syckel in that case will show that that act was clearly unconstitutional and for reasons which do not apply to the statute now under review. By the act of March 12th, 1880, it was provided that there should be paid "to the several prosecutors of the pleas of this state fixed annual salaries in lieu of fees," and then the act proceeds not to fix the salaries of all the prosecutors of all the counties in the state, but only of certain of the prosecutors of certain counties of the state, as follows: In the counties of Atlantic and Ocean, each the sum of $400; in the county of Hunterdon, $600; in the county of Morris, $1,500; in the county of Monmouth, $1,200; in the county of Mercer, $1,800; in the county of Passaic, $2,000; in the county of Hudson, $7,000. The act also provided that these prosecutors should pay their own assistants. This was an act general in its terms and special in its application. It is not a uniform rule operating throughout the state, as its title would import; the body of the act makes it applicable only to certain designated counties without regard to any method of classification, but by specifically naming such counties and fixing the salaries of the prosecutors therein. It was not general, but clearly local and special in its application, and we agree with the opinion

of the Supreme Court in that case, wherein it declares, "the salaries fixed by this law were governed by no general rule according to population or services rendered. It is arbitrary and creates the most glaring inequalities."

The act of April 2d, 1898, which is attacked by the plaintiff in error, applies to all counties within the class mentioned —that is, all counties exceeding the population of one hundred and fifty thousand. It establishes a uniform system for the collection, return and payment over of the fees collected by the officers mentioned in the act in all the counties to which it applies. It provides for a fixed compensation to the officers mentioned in the act and their assistants, to be paid by the county, and it directs that all moneys received from fees and the like shall be turned into the treasury of the counties by the respective officers. If it is within the power of the legislature to classify counties with respect to population and to provide that a class of officers existing in all the counties may be compensated by different methods, based upon public convenience, and the labor and time required in the performance of their respective duties, then the act here questioned should be upheld.

In the case of *Skinner* v. *Collector*, 13 *Vroom* 407, an act which fixed an annual salary to the several judges of the Courts of Common Pleas of counties of less than one hundred thousand inhabitants in lieu of the *per diem* allowance previously paid, was held to be constitutional within the provision of the constitution now under consideration. If the principle enunciated in that case is to be sustained by this court, the act of April 2d, 1898, would seem to be a lawful classification for the purposes of this legislation. It is quite apparent that it would be difficult to establish a uniform rule that would be applicable to all the counties as to the compensation of the several officers mentioned in the act of April 2d, 1898. To make the salaries of all these officials the same in all counties, irrespective of population or work, of course, would not be either just or equitable. In the large and populous counties composing counties of the first class, the fees and emoluments incident to these offices are very

great, and out of proportion to the value of the service rendered by these officials, while in the smaller counties of the state, they are in many cases barely compensatory for the service rendered. It would seem, therefore, that the mere statement of the actual condition of affairs would relieve any classification that was apparently founded upon an honest endeavor on the part of the legislature to justly compensate each class of these officials from the allegation that it was illusory. Courts will not interfere with the classification made by the legislature unless it is apparent that it is illusory. It is within the power of the legislature to fix by statute that certain officials of a specified class shall be paid by salaries or fees of a greater or less amount than that paid to others of the same class, where the natural conditions indicated by the population and the services required make it apparent that a different method of compensation should be observed, or a different amount of compensation should be paid, and would be just, in the case of the one class, as contra-distinguished from that of the other, and where it appears that compensation fixed upon such a classification has substance, and is fair and just to the official, and in the interest of the public, the classification is not illusory and will be sustained.

That legislation for municipalities based upon population, where population bears a reasonable relation to the subject-matter of the legislation, is constitutional, is settled by a line of well-considered cases in this state. *Randolph* v. *Wood,* 20 *Vroom* 85; *S. C.,* 21 *Id.* 175; *Paul v. Gloucester County,Id.* 585; *Mortland* v. *Christian,* 23 *Id.* 537; *In re Haynes,* 25 *Id.* 6; *Matheson* v. *Caminade,* 26 *Id.* 4; *Wood* v. *Atlantic City,* 27 *Id.* 232; *Wanser* v. *Hoos;* 31 *Id.* 482; *Foley* v. *Hoboken,* 32 *Id.* 478; *Lowthorp* v. *Trenton,* 33 *Id.* 795, 797.

In speaking for this court in Paul *v.* Gloucester County, Mr. Justice Van Syckel said:

"Whether the basis of classification is wise or judicious or whether it will operate as fairly as some other basis that might be adopted, is a question for the legislature and not for the courts. The extreme limit of our inquiry in this

direction is, does population bear any reasonable relation to the subject to which the legislature has applied it; is it germain to the law?"

The principle deducible from all the decisions above cited is this, that legislation which classifies municipalities in matters of their structure, machinery and powers on a basis of population where population has reasonable relation to the necessities of the municipalities so classified, as contradistinguished from others not similarly circumstanced, is good; and where it appears that such is the actual effect of the statute, the act is a general law, and classification being solely a matter for legislative judgment, a legislative classification will always prevail where it appears to be within the principle above stated and there is no apparent attempt to apply it illusively.

Applying these tests to the act of April 2d, 1898, we do not find that it in any way violates the constitutional inhibition against the passage by the legislature of a private, local or special law regulating the internal affairs of counties.

The judgment of the Circuit Court should be affirmed.

*For affirmance*—THE CHANCELLOR, CHIEF JUSTICE, VAN SYCKEL, DIXON, GARRISON, COLLINS, FORT, GARRETSON, BOGERT, HENDRICKSON, ADAMS, VREDENBURGH, VOORHEES. 13.

*For reversal*—None.