STATE OF FLORIDA *ex rel.* RIVERS H. BUFORD, ATTORNEY GENERAL, *Relator,* v. W. ROGER WATKINS, AS CLERK OF THE CIRCUIT COURT OF HILLSBOROUGH COUNTY, FLORIDA, *Respondent.*

Opinion Filed April 28, 1923.

Petition for Rehearing Granted January 22, 1924.

Opinion on Rehearing Filed December 5, 1925.

A classification for the purpose of regulating the fees of officers of the State and county, based upon population whereby the State and county officers in the more populous counties are given a greater portion of the fees collected by them, than is given to such officers in other counties, in unconstitutional and void.

On Rehearing.

Where a writ of mandamus is applied for to compel a county official to render to the Board of County Commissioners a sworn statement showing in detail the expenses of his office, fees and commissions collected and the gross and net income thereof, under the provisions of Chapter 8497, Laws of 1921, and the amendments thereto, and the defense interposed is the alleged unconstitutionality of the Act and such Act is not held to be unconstitutional, the writ of mandamus should issue.

A case of original jurisdiction.

Peremptory Writ awarded.

*Rivers Buford,* Attorney General, and *T. M. Shackleford, Jr.,* for Relator;

*James F. Glen, Evans & Mershon* and *O. O. McCollum,* for Respondent;

*Carter & Yonge* and *John T. G. Crawford,* as Amici
Curiae.

BROWNE, J.—The Attorney General applied for and ob-
tained an alternative writ of mandamus directed to W.
Roger Watkins as Clerk of the Circuit Court of Hills-
borough County, Florida, to require him to comply with
the provisions of Chapter 8497, Laws of Florida, and
render to the Board of County Commissioners of Hills-
borough County, Florida, a sworn statement showing in
detail the expenses of his office, fees and commissions
collected and the gross and net income thereof, for the
year ending December 31, 1922.

The return to the writ challenges the Constitutionality
of Chapter 8497, Acts of 1921, and the matter is now be-
fore us on a motion for a peremptory writ.

In the case of State v. Shepard, decided August 14,
1922, 84 Fla. 206, 93 South. Rep. 667, Chapter 8497, it
was held "that the gross and net amount of fees col-
lected in 1921 by the clerk of the circuit court in one
county of the State is largely in excess of those collected
in the only county of the state having 100,000 or more
population. But the respondent is not within the classi-
fication based on population, since he is an officer in a
county of less than 100,000 population, and he cannot
contest the validity of that classification when it does not
invalidate the classification he is in".

In the instant case the respondent is an officer in a
county having over 100,000 population, and is therefore
in a position to raise the question of the constitutionality
of the second proviso of the act, which the respondent in
the Shepard case was not.

Assuming that Section 1 of the act is valid down to
the second proviso, which makes the objectionable classi-

fication, the question presents itself of the effect of the invalid portion upon the entire section.

The opinion in the Shepard case, *supra,* intimated that this proviso was based upon an arbitrary and unreasonable classification.

In a separate concurring opinion the then Chief Justice said: "I concur in the conclusion reached in this case, that Chapter 8497, Acts of 1921, is constitutional and valid but only if the proviso in relation to counties having 100,000 population or more is eliminated.

"I regard that proviso as unconstitutional and invalid. All of the 'enumerated cases' in Section 20, Art. 3 of the Constitution, whereby the Legislature is prohibited from passing special or local laws, are of equal dignity.

"The Legislature cannot enact a valid law providing that 'the punishment for the crime of larceny shall be imprisonment not exceeding two years, or by fine not exceeding $1,000, or by both fine and imprisonment in all counties in the state; provided that 'in counties having 100,000 population or more', the punishment shall be by imprisonment not exceeding five years, or by a fine not exceeding $5,000, or by both fine and imprisonment.'

"Neither could the Legislature make a rule for 'changing venue of civil and criminal cases' for part of the state, and a different rule 'in counties of 100,000 population or over.'

"The same is true with regard to 'summoning and impaneling grand and petit juries' where expediency and convenience might suggest a different rule for sparsely settled counties than in those more thickly populated.

"If a classification based upon population may be constitutionally applied in the matter of 'regulating the fees of officers of the state and county,' a similar classification would have to be sustained in an act making the punish-

ment of crime vary according to population, in the several counties of the State, and likewise with regard to all the 'enumerated cases' in Section 20 of article 3 of the Constitution. It follows that so much of Section 1 of Chapter 8497 as provides:

" 'That in counties of one hundred thousand (100,000) population or over said officers shall receive from the net income the first five thousand ($5,000.00) dollars; ninety (90%) per cent. of the next one thousand ($1,000.00) dollars; fifty (50%) per cent. of the next two thousand ($2,000.00) dollars; thirty (30%) per cent. of the next two thousand ($2,000.00) ; and ten (10%) per cent of the rest and residue thereof; Provided, further, that in no event shall such officers be entitled to more than seven thousand five hundred ($7,500.00) dollars per annum'—is unconstitutional and void."

In this concurring opinion Mr. Justice BROWNE also gave it as his opinion that the proviso could be eliminated without destroying the purpose of the act. Upon further consideration he has reached a different conclusion.

The proviso being unconstitutional it becomes necessary for us to determine what was the legislative purpose as shown by the language of the entire Section 1, and it is quite palpable therefrom that the purpose was to limit the compensation of county officials to $6,000.00 per year, except in counties having 100,000 or more, and as to them the compensation should be limited to $7,500.00 per year. If we eliminate the second and third proviso of Section 1, that purpose is undoubtedly destroyed, and there will be substituted for the legislative will a different plan, namely, that the compensation of *all* county officers shall be limited to $6,000.00 per year. That such was not the intention of the legislature is clear when the act is read in connection with the fact known to every one in Florida that there are

at least two counties in the State, the population of each of which exceeds 100,000, and with the rapid growth of our population, other counties will soon come within the 100,000 classification.

The proviso being unconstitutional, and the majority of the court being satisfielded that the manifest purpose of the legislature would not be carried out if the salary of officials in the counties of over 100,000 population should be limited to $6,000.00 a year, the entire section must fall.

The remaining section of the act cannot become effective when Section 1 is eliminated, as there is nothing then in the act to which they refer or upon which they can operate.

The entire act, therefore, must fall, and the motion for a peremptory writ is denied.

TAYLOR, C. J., AND ELLIS, J., concur.

WHITFIELD AND WEST J. J., dissent.

WHITFIELD, J., dissenting.

Section 1, Chapter 8497, Acts of 1921, is as follows:

"Each county official whose compensation for his official duties is paid wholly or partly by fees or commission or by both by fees and commissions shall receive as his yearly compensation for his official services, from the whole or a part of the fees and commissions so collected, the following sums only: All the net income from such office not to exceed Five Thousand ($5,000.00) Dollars; sixty (60%) of the next One Thousand $(1,000.00) Dollars, or any fraction thereof; forty (40%) per cent of the next Two Thousand ($2,000.00) Dollars, or any fraction thereof; twenty (20%) per cent of the next Two Thousand ($2,000.00) Dollars, or any fraction thereof, and ten(10%)

VOL. 88, JUNE TERM, 1924. 397

State ex rel. Buford v. Watkins—Dissenting Opinion.

per cent of the rest and residue thereof; Provided, however, that should said method of computation yield a net income of more than Six Thousand ($6,000.00) Dollars per year, the excess over and above Six Thousand ($6,000.00) Dollars net per year shall be paid over as herein provided and no such officer shall under the foregoing computation of remuneration receive as his net income from the moneys so collected by him more than Six Thousand ($6,000.00) Dollars per year. Provided, that in counties of One Hundred Thousand (100,000) population or over said officers shall receive from the net income the first Five Thousand ($5,000.00) Dollars; ninety (90%) per cent of the next One Thousand ($1,000.00) Dollars; fifty (50%) per cent of the next Two Thousand ($2,000.00) Dollars; thirty (30%) per cent of the next Two Thousand ($2,000.00) Dollars; and ten (10%) per cent of the rest and residue thereof; Provided, further, that in no event shall such officers be entitled to more than Seven Thousand Five Hundred ($7,500.00) Dollars per annum."

The opinion of the court in holding the entire Act to be void, because a portion of Section 1 is held to be invalid, wholly ignores Section 5 of the Act, which is as follows:

"Sec. 5. Should any section of this Act be held inoperative or void, or should its application to any official be held inoperative or void, the same shall not affect the legality or applicability of the balance thereof."

Under this express provision, should any section of the Act be held to be void, or should its application to any official be held to be inoperative, such void or inoperative part "shall not affect the legality or applicability of the balance" of the Act. The portion of the Act held to be invalid is clearly separable and may be disregarded without affecting the efficiency of the remainder of the Act to accomplish the main legislative purpose; and Section 5

specifically expresses the legislative intent that invalid portions of the Act shall not affect the enforcement of the Act, with the invalid portion eliminated. No authority is adduced for nullifying the statute.

The last census shows that Hillsborough county has 87,901 population. This is stipulated and admitted in the proceedings. The respondent is the Clerk of the Circuit Court for Hillsborough County and is within the main provisions of Section 1 of the statute. He is not in the class referred to in the second and third provisos to Section 1, and he has no right to contest the validity of such provisos. This is distinctly held in State *ex rel.* Buford v. Shepard, 84 Fla. 206, 93 South. Rep. 667.

As the writ covers only amounts collected as fees by the respondent since the Act became effective, the respondent may be estopped to assail the validity of the statute. He cannot claim benefits under the statute and then contest its constitutionality.

The constitution expressly provides that the compensation of county officers shall be prescribed by law and no limitation is imposed by the constitution upon this express power of the legislature. The compensation of officers may be changed at any time by laws operating prospectively when not restrained by organic provisions. See 29 Cyc. 1427; 22 R. C. L. 533; Cotton v. Ellis, 52 N. C. 545; Fortune v. Board of Com'rs of Buncombe County, 140 N. C. 322, 52 S. E. Rep. 950; Board of Com'rs of New Hanover County v. Stedman, 141 N. C. 448, 54 S. E. Rep. 269; Farwell v. Rockland, 62 Me. 296; Legler v. Paine, 147 Ind. 181, 45 N. E. Rep. 604; 12 C. J. 1139.

Neither the constitution nor the statutes regulating the fees that may be collected by county officers gives to such officer a vested right in fees that may be collected after the enactment of a statute fixing the compensation of

such officers and requiring all collections for fees in excess of stated amounts to be paid into the county treasury, as does Chapter 8497; therefore collections of fees made after the latter statute became effective are subject thereto; and if an officr collects fees after the enactment of the later statute, he cannot avail himself of the benefits conferred by the statute and then assail its validity.    12 C. J. 770; 8 Cyc. 792; Outagamie County v. Zeuhlke, 165 Wis. 32, 161 N. W. Rep. 6; Greene County v. Lydy, 263 Mo. 77, 172 S. W. Rep. 376, Ann. Cas. 1917C 274, and Notes.

In State *ex rel.* Buford v. Spencer, 81 Fla. 211, text 215, 87 South. Rep. 634, the court held, in express terms, that fees collected by officers "represent the charge made by the State for services rendered by it through certain designated officers.   The State may give all the fees to the officer as his compensation, or it may give him a portion only, and retain the remainder to be applied to such purposes as the legislature may determine."   In view of this adjudication, the respondent has no right to litigate the constitutionality of the statute.

In State *ex rel.* Atlantic Coast Line R. Co. v. State Board of Equalizers, 84 Fla. 592, 94 South. Rep. 681, the State officers had not acted under the statute for their benefit. The services of the official here were not rendered and the fees were not collected before the change in the statute as in Louisiana *ex rel.* Fisk v. Jefferson Police Jury, 116 U. S. 131, 6 Sup. Ct. Rep. 329.

As the Attorney General did not question the right of respondent to challenge the constitutionality of the statute, its validity will be considered as was done in the Shepard case, 84 Fla. 206, 93 South. Rep. 667.   There is no contention that Chapter 8497 or any part thereof violates any provision of the Federal constitution.

The grounds of attack now made on the statute are not

materially different from those urged in the Shepard case where by a unanimous court Chapter 8497 was held to be valid. The learned criticisms of the statute by counsel for the respondent have not disclosed any conflict between the constitution and Chapter 8497, Acts of 1921.

The constitution classifies laws into two groups, *viz*: those that are general and those that are special or local, further providing that "the legislature shall not pass special or local laws in any of" specifically "enumerated cases"; and provides that "in all cases enumerated * * * all laws shall be general and of uniform operation throughout the State, but in all cases not enumerated or excepted * * * the legislature may pass special or local laws." Among the "enumerated cases" in which laws shall be "general and of uniform operation throughout the State," are those "regulating the fees of officers of the State and county." Secs. 20 and 21, Art. III.

The classifications of general and of special or local laws by the constitution do not forbid statutory regulations by special or local laws of matters that are not among the "cases enumerated" in which the constitution provides that laws "shall be general and of uniform operation throughout the State." Special local laws are expressly authorized except in the specifically "enumerated cases."

It is expressly provided that the "compensation" of county officers "shall be prescribed by law." Sec. 6, Art. VIII. But as laws prescribing the "compensation" of county officers are not among the "enumerated cases" in which laws are required to be general, "the legislature may pass special or local laws" prescribing such compensation.

The constitution contains no classifications of laws or of subjects relating to the compensation of county officers or to the distribution of fees collected by county officers.

Chapter 8497, by its terms was enacted "to fix and determine the compensation and remuneration of all county officials in the State of Florida now paid in whole or in part by fees and commissions." Such a law is not among the "enumerated cases" in which laws are required by the constitution to "be general and of uniform operation throughout the State," therefore under the constitution "the legislature may pass special or local laws" on the subject.

The Constitution does not provide that the county officers are entitled to the fees collected by them, and this Court has held in State ex rel. Buford v. Spencer, 81 Fla. 211, 87 South. Rep. 634, that the "fees represent the charge made by the State for services rendered by it through certain designated officers," and that "the State may give all the fees to the officer as his compensation, or it may give him a portion only, and retain the remainder to be applied to such purposes as the Legislature may determine." State ex rel. Attorney General v. Judges, 21 Ohio St. 1. The Constitution does not prescribe or limit the classifications that may be made in regulating the compensation of officers, therefore the Legislature may classify as it sees proper in prescribing such regulations. The provision of the Constitution that "all laws * * * regulating the fees" that may be collected by "officers of the State and county," "shall be general and of uniform operation throughout the State," does not require laws regulating the disposition of the fees when collected to be "general and of uniform operation throughout the State." And even if under the Constitution the "compensation" of county officers may be "fixed" or "prescribed" only by general laws, and even if under the Constitution the disposition of fees collected pursuant to general and uniform laws may be regulated only

by general laws, Chapter 8497 is a general law, whether the proviso to Section 1 of the Act is or is not a valid classification or is or is not a separable enactment. See Harwood v. Wentworth, 162 U. S. 547, 16 Sup. Ct. Rep. 890; Stone v. Wilson, (Ky. App.) 39 S. W. Rep. 49; Ex Parte Wells, 21 Fla. 280; Collier v. Cassady, 63 Fla. 390, 57 South. Rep. 617; Givens v. Hillsborough County, 46 Fla. 502, 35 South. Rep. 88; Whitaker v. Parsons, 80 Fla. 352, 86 South. Rep. 247; Carlton v. Johnson, 61 Fla. 15, 55 South. Rep. 975; Fine v. Moran, 74 Fla 417, 77 South. Rep. 533; Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902; Dell v. Marvin, 41 Fla. 221, 26 South. Rep. 188; State *ex rel.* Lamar v. Jacksonville Terminal Co., 41 Fla. 363, 27 South. Rep. 221. The classifications of the statute are general, reasonable and practical, and embrace all within the classes. The law covers a general State purpose and the classifications are not arbitrary. See 25 R. C. L. p. 814, *et seq.* and Notes; State *ex. rel.* Patterson v. Donovan, 20 Nev. 75, 15 Pac. Rep. 783; Codlin v. Kohlhousen, 9 N. M. 565, 58 Pac. Rep. 499; Harwood v. Perrin, 7 Ariz. 114, 60 Pac. Rep. 891; Clark v. Finley, 93 Tex. 171, 54 S. W. Rep. 343; 36 Cyc. 987; Stone v. Wilson (Ky. App.) 39 S. W. Rep. 49; Chicago, B. & Q. R. Co. v. Doyle, 258 Ill. 624, 102 N. E. Rep. 260, Ann. Cas. 1914B 385; 6 R. C. L. 418; Budd v. Hancock, 66 N. J. L. 133, 48 Atl. Rep. 1023; 3 Words & Phrases (2nd Series) p. 168; 4 Words & Phrases (2nd Series) p. 635; 7 L. R. A. Digest, p. 8874 *et seq.;* Cooper v. Rollins, 152 Ga. 588, 110 S. E. Rep. 726.

"Special or local laws" are forbidden in "regulating the fees of officers of the State and county." This is for the protection of those who pay the fees. Special or local laws are those made applicable exclusively to particular persons or places, as distinguished from laws that are gen-

eral in their application or that relate to classes of persons or subjects.

The provisions of the State Constitution and the Fourteenth Amendment are not intended to forbid classifications and justly discriminating laws fixing the "compensation" of officers even if such laws are required to be general or of uniform operation throughout the State. See Sec. 27, Art. III; Sec. 6, Art. VIII; Secs. 16, 18, 27 and 30 Art. V, as to fixing the compensation of county officers. See also chapters 7886, 8496 and 8498 Laws of Florida.

As the authority to prescribe the "compensation" of county officers is expressly conferred without limitation by the Constitution, the Legislature may fix such compensation with or without reference to fees collected by such officers; and if the compensation is fixed with reference to fees collected, the rate of compensation so fixed is not thereby required to be by laws that are "general and of uniform operation throughout the State"; and if it be so required, practicable and reasonable classifications potentially applicable throughout the State are not forbidden, and the classifications of Chapter 8497 are practicable and reasonable and are potentially applicable throughout the State.

Chapter 8497 in Section 1, fixes the "compensation" of county officers by stated rules having reference only to the net amount of all fees and commissions allowed to be collected by such officers, with regulations in other sections to make the Act effective; and by a proviso in the nature of an exception to Section 1 it is provided that in counties of more than 100,000 population the "compensation" of county officers shall be fixed by a stated rule having reference to population as well as to the net amounts of all fees and commissions collected in the

county. The proviso to Section 1 is not essential to the main purpose of the Act *i.e.*, the fixing of compensation for county officers. It is merely a sub-classification, and an elimination of it if invalid will leave those covered by the proviso or exception subject to the other provisions of the statute as though no proviso or exception had been incorporated in the Act. This interpretation is expressly required by Section 5 of the Act and it should be observed. Section 5 cannot, and is not intended to encroach upon judicial functions. It merely expresses the Legislative intent with reference to the several provisions of the enactment.

The manifest purpose and effect of Section 5 of Chapter 8497 is to declare the Legislative will to enact all the parts of the Act that are constitutional and that valid portions would have been enacted without the other portions that may violate organic law. See Snetzer v. Gregg, 129 Ark. 542, 196 S. W. Rep. 925, L. R. A. 1917F, 999; 6 R. C. L. p. 125; Public Utilities Com. v. Potomac El. Power Co., U. S. Sup. Ct., April 9, 1923. Of course, if Section 1 is invalid as an entirety, the Act is inoperative, because there is nothing to execute if Section 1 is invalid; but a portion at least of Section 1 has been expressly adjudged to be valid as against substantially the same attack that is made here, and Section 5 should not be construed to destroy the Act when it was designed to save the valid portions of the law. Peniusular Industrial Ins. Co. v. State, 61 Fla. 376, 55 South. Rep. 398; St. Louis Southwestern R. Co. v. State of Arkansas, 235 U. S. 350, 35 Sup. Ct. Rep. 99. The intent of the statute should control. Knight & Wall Co. v. Tampa Sand Lime Brick Co., 55 Fla. 728, 46 South. Rep. 285; Curry v. Lehman, 55 Fla. 847, 47 South. Rep. 18; City of Miami v. Romfh, 66 Fla. 280, 63 South. Rep. 440. The word "Section" as used in

Section 5 of the Act means "portion," and this was the intended adjudication in State *ex rel.* Buford v. Shepard, 84 Fla. 206, 93 South. Rep. 667. Section 5 in effect provides that if the proviso to Section 1 is invalid in its application, the officers covered by the proviso shall be subject to the other provisions of the Section. Board of Trade v. Olson, U. S. Sup. Ct., April 16, 1923.

Even if the organic provision that laws fixing the fees of officers shall be "general and of uniform operation throughout the State" has any application to Chapter 8497, which fixes the compensation to be allowed officers and does not prescribe or regulate fees that may be collected, the quoted provision of the constitution does not forbid proper classifications that are potentially applicable "throughout the State," (Bloxham v. Florida Cent. & P. R. Co., 35 Fla. 625, 17 South. Rep. 902; Carlton v. Johnson, 61 Fla. 15, 55 South. Rep. 975; Ex Parte Wells, 21 Fla. 280; Chap. 7886 Acts 1919; 25 R. C. L. 814), and it has been held that the classification of this statute relating to the volume of fees collected is valid. State *ex rel.* Buford v. Shepard, 84 Fla. 206, 93 South. Rep. 667. The respondent is in that class because no official census shows that the county in which he is an officer is in the class that is predicated upon 100,000 population of the county, the last official census showing less than 100,000 population in Hillsborough County; 23 Atl. 517; 50 Atl. 163; and the respondent cannot assail a classification that does not embrace him unless the invalidity of that classification invalidates the class the respondent is in. See Jeffrey Mfg. Co. v. Blagg, 235 U. S. 571, 35 Sup. Ct. Rep. 167; Hendrick v. State of Maryland, 235 U. S. 610, 35 Sup. Ct. Rep. 140; State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367; Stinson v. State, 63 Fla. 42, 58 South. Rep. 722; Scally v. Meminger, 64 Fla. 464, 60

South. Rep. 180; Adams v. American Agricultural Chemical Co., 78 Fla. 362, 82 South. Rep. 850; 12 C. J. 768. And even if the classification based on 100,000 population is invalid, it will not affect the validity of the remainder of the Act, first, because it is clearly separable and its elimination would not cause results *with reference to the main purpose* of the Act not intended by the Legislature, and second, because the Act itself in Section 5 provides that if one Section of the Act be invalid, the remainder of the Act shall not thereby be affected. This was expressly held in State *ex rel.* Buford v. Shepard, *supra,* even though the word "Section" and not "portion" is used in the fifth Section. Section 5 should not by technical construction be utilized to nullify valid portions of the Act, when obviously such Section specifically expresses a Legislative intent that the valid portions of the Act shall be effectuated. It is the duty of the Court to give effect to the lawmaking intent. To hold that because the word "Section" was used in Section 5, the entire Section 1 must be eliminated if a portion of it is invalid, would be to so construe the statute as to destroy it, rather than to so construe it as to sustain it as it is the duty of the court to do if it can fairly so be done. Davis v. Florida Power Co., 64 Fla. 246, 60 South. Rep. 759; State *ex rel.* Young v. Duval County, 76 Fla. 180, 79 South. Rep. 692; Burr v. Florida East Coast R. Co., 77 Fla. 259, 81 South. Rep. 464; In Re Seven Barrels of Wine, 79 Fla. 1, 83 South. Rep. 627; Florida East Coast R. Co. v. State, 79 Fla. 66, 83 South. Rep. 708; St. Louis Southwestern R. Co. v. State of Arkansas, 235 U. S. 350, 35 Sup. Ct. Rep. 99; 12 C. J. 787; 6 R. C. L. 79, 101. Even if the classification based on population is more liberal to the officers than the classification based on collections of fees, the respondent has no legal ground of

complaint, as the Legislature may by law fix the compensation of county officers as its will dictates.

Even if the proviso to Section 1 of Chapter 8497 is invalid, Section 5 cannot against its plain intent fairly be construed to require the entire Section one to be eliminated, though the proviso may be regarded as eliminated and the remainder of the Act may be made effective to accomplish the general legislative purpose.    This may be done without the aid of Section 5 of the Act.    Carr v. Thomas, 18 Fla. 736; Ex Parte Wells, 21 Fla. 280; Donald v. State, 31 Fla. 255, 12 South. Rep. 695; English v. State, 31 Fla. 340, 12 South. Rep. 689; Harper v. Galloway, 58 Fla. 255, 51 South. Rep. 226; Stinson v. State, 63 Fla. 42, 58 South. Rep. 722; Board of Com'rs of Hillsborough County v. Savage, 63 Fla. 337, 58 South. Rep. 835; State *ex rel.* Clarkson v. Philips, 70 Fla. 340, 70 South. Rep. 367; Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47; Prairie Pebble Phosphate Co. v. Silverman, 80 Fla. 541, 86 South. Rep. 508.    See also 7 L. R. A. Digest, p. 8838 *et seq.;* Lathrop v. Mills. 19 Cal. 515, text 530.

An elimination of the proviso to Section 1 would not render the entire Act invalid, because the proviso is a severable portion of Section 1; and its elimination would not defeat the main purposes of the Act or cause results not contemplated in enacting the statute, as in Spraigue v. Thompson, 118 U. S. 90, 6 Sup. Ct. Rep. 988; 6 R. C. L. 129.

Section 5 is designed to indicate that the statute would have been enacted without the proviso to Section 1.    An elimination of the proviso would not render unenforceable the remainder of the Act as in State *ex rel.* Swearingen v. Jones, 79 Fla. 56, 84 South. Rep. 84; State *ex rel.* Clyatt v. Hocker, 39 Fla. 477, 22 South. Rep. 721; nor is the proviso an inducement for the Act as in City of

Jacksonville v. Ledwith, 26 Fla. 163, text 211, 7 South. Rep. 885; Low v. Rees Printing Co., 41 Neb. 127, 59 N. W. Rep. 362, 24 L. R. A. 702; Hubert v. Martin, 127 Wis. 412, 105 N. W. Rep. 1031, 3 L. R. A. (N. S.) 653; nor would the elimination of the proviso affect the ultimate object and main purposes of the Act, as in Taylor v. Anderson, 40 Okla. 316, 137 Pac. Rep. 1183, 51 L. R. A. (N. S.) 731; State *ex rel.* Wausau Street R. Co. v. Bancroft, 148 Wis. 124, 134 N. W. Rep. 330, 38 L. R. A. (N. S.) 526. See 6 R. C. L. p. 125; Smetzer v. Gregg, 129 Ark. 542, 196 S. W. Rep. 925, L. R. A. 1917F 999.

The proviso to Section 1 is not so interwoven with other provisions of the Act that it cannot be separated therefrom without in effect usurping a Legislative function in reframing the Act, as held in Hill v. Wallace, 259 U. S. 44, 42 Sup. Ct. Rep. 453; City of Jacksonville v. Ledwith, *supra;* Ballard v. Mississippi Cotton Oil Co., 81 Miss. 507, 34 South. Rep. 533, text 554; Butts v. Merchants' & Miners' Transp. Co., 230 U. S. 126, 33 Sup. Ct. Rep. 964; State *ex rel.* West v. Hillburn, 70 Fla. 55, 69 South. Rep. 784; its elimination would not defeat the Legislative purpose as in State *ex rel.* Buford v. Spencer, 81 Fla. 211, 87 South. Rep. 634, or subject persons to penalties who were intended to be exempted, as in State v. Patterson, 50 Fla. 127, 39 South. Rep. 398; Connolly v. Union Sewer Pipe Co., 184 U. S. 540, text 565, 22 Sup. Ct. Rep. 431; nor would the elimination of the proviso remove a limitation specifically imposed by repeated express provisions stating the limitation, as in Westlake v. Merritt, decided at this term; nor does a defective or misleading title destroy the entire Act, as in Webster v. Powell, 36 Fla. 703, 18 South. Rep. 441; Davis v. Wilson & Toomer Fertilizer Co., 84 Fla. 102, 92 South. Rep. 916. The proviso and the other part of Section 1 are not so mutually de-

pendent that the Section would not have been enacted without the proviso, as in O'Brien v. Krenz, 36 Minn. 136, 30 N. W. Rep. 458; Kellyville Coal Co. v. Harrier, 207 Ill. 624, 69 N. E. Rep. 927; State v. Chicago, B. & Q. R. Co., 195 Mo. 228, 92 S. W. Rep. 784, 113 Am. St. Rep. 661; Darby v. City of Wilmington, 76 N. C. 133; Warren v. Mayor and Aldermen of Charleston, 2 Gray (Mass.) 84, cited for respondent. In Albion Consolidated Min. Co. v. Richmond Min. Co., 19 Nev. 225, 8 Pac. Rep. 480, it is said the Act contained no provision indicating an intent that illegal portions may be eliminated and the remainder is intended to stand as the statute does in this case.

If the proviso is not invalid, as in Springfield Gas & Electric Co. v. City of Springfield, 292 Ill. 236, 126 N. E. Rep. 739, cited for respondent of course it is not necessary to determine what the effect of Section 5 of the Act would be if the proviso were invalid. See Smetzer v. Gregg, 129 Ark. 542, 196 S. W. Rep. 925, L. R. A. 1917F 999.

Even if it may be agreed that the present population of Hillsborough county puts it in the population class in the statute, so the respondent may challenge the validity of that classification, it does not appear that such classification is invalid because it is based upon population, and it was not so held in the Shepard case, *supra*. See Farnum v. Warner, 104 Cal. 677, 38 Pac. Rep. 421; Summerland v. Bicknell, 111 Cal. 567, 44 Pac. Rep. 232; Clark v. Finley, 93 Tex. 171, 54 S. W. Rep. 343; Minnehaha County v. Thorne, 6 S. D. 449, 61 N. W. Rep. 688; Winston v. Stone, 102 Ky. 423, 43 S. W. Rep. 397; Legler v. Paine, 147 Ind. 181, 45 N. E. Rep. 604; Harmon v. Board of Comrs. of Madison County, 153 Ind. 68, 54 N. E. Rep. 105. Since, in the absence of organic limitations, the legislature has the

power to fix the compensation of county officers as it may determine, it can make classifications in its discretion, in enacting prospective statutes, there being no personal or property rights involved. The right of public officers to compensation depends upon the will of the lawmaking department, where not controlled by organic law. The constitution does not require compensation of public officers to be "in proportion to duties" as in Longan v. County of Solano, 65 Cal. 122, 3 Pac. Rep. 463; Green v. County of Fresno, 95 Cal. 329, 30 Pac. Rep. 544. But even if there be a limit to the legislative discretion to classify this particular subject, the classification made upon population is not without a reasonable and practical basis, and the courts have no power to annul the legislative will where there is a classification that is within the limits of the discretion of the lawmaking power. See Lindsley v. Natural Carbonic Gas Co., 220 U. S. 61, 31 Sup. Ct. Rep. 337; Rast v. Van Deman & Lewis Co., 240 U. S. 342, 36 Sup. Ct. Rep. 370; Heisler v. Thomas Colliery Co., 260 U. S. 245, 43 Sup. Ct. Rep. 83; Dutton Phosphate Co. v. Priest, 67 Fla. 370, 65 South. Rep. 282; Arkansas Natural Gas Co. v. Arkansas Railroad Commission, 261 U. S. 379, 43 Sup. Ct. Rep. 387; Stone, Auditor, v. Wilson, 19 Ky. Law Repts. 126, 39 S. W. Rep. 49.

The provision requiring the fees collected in excess of a stated net amount to be paid into the county treasury is no more a "sale of justice" than it is when the officers are allowed to retain all the fees collected by them. The parties who pay the fees are not complaining that they have had to "purchase justice" by paying the statutory fees *for services rendered* to them by the officers as the servants of the State. The fees are not shown to be unreasonable or for unlawful purposes. Green County v. Lydy, 263 Mo. 77, 172 S. W. Rep. 376; Ann. Cas. 1917C

VOL. 88, JUNE TERM, 1924. 411

State ex rel. Buford v. Watkins—Dissenting Opinion.

274, and Notes; Christianson v. Pioneer Furniture Co., 101 Wis. 343, 77 N. W. Rep. 174; Hewlett v. Nutt, 79, N. C. 263; Henderson v. State *ex rel.* Stout, 137 Ind. 552, 36 N. E. Rep. 257, 24 L. R. A. 469; In Re Lee, (Okla.) 168 Pac. Rep. 53, L. R. A. 1918B 144, and Notes; Malin v. La Moure County, 27 N. D. 140, 145 N. W. Rep. 582, 50 L. R. A. (N. S.) 997, Ann. Cas. 1916C 207; Northern Counties Investment Trust v. Sears, 30 Ore. 388, 41 Pac. Rep. 931, 35 L. R. A. 188; Bailey v. Frush, 5 Ore. 136; 12 C. J. 1291; 8 Cyc. 1138.

Chapter 8497, Acts of 1921, rests upon the express provisions of Section 6, Article VIII of the Constitution that county officers' "compensation shall be prescribed by law," and upon like provisions contained in Sections 16, 18, 27 and 30, Article V, and Section 27, Article III. .

Even if the provisions of Section 15, Article XII, relative to the payment of stated salaries to county officers, are applicable to Chapter 8497, Acts of 1921, the statute expressly provides that the county officers shall pay "into the general revenue fund of their respective counties, all moneys in excess of the sums to which they are under the provisions of this Act entitled." This amounts to the same as requiring all fees collected to be paid "into the general revenue fund" of the counties, and providing that the compensation allowed "shall be paid from the general fund" of the county as commanded by the Constitution. This would accord with the express holding in State *ex rel.* Buford v. Spencer, 81 Fla. 211, 87 South. Rep. 634, that "Fees collected by officers represent the charge which the State makes for services rendered by it through its officers, and constitutes a fund subject to the control of the State and to be applied as the legislature directs." See Harmon v. Board of Com'rs. of Madison County, 153 Ind. 68, 54 N. E. Rep. 105.

In Henderson v. Koenig, 168 Mo. 356, 68 S. W. Rep. 72, 57 L. R. A. 659, it was held that under the several organic provisions in Missouri the legislature could not require one county officer to pay into the public treasury all fees collected by him under the law and to receeive a salary while other county officers were compensated by fees. In that case it was stated that "if the legislature desires to classify counties by population, and thus proportion the amounts of fees the various judges of probate may retain according to such ratio, then this must be done by appropriate legislative enactment." That is done in this case. See 36 Cyc. 1016 Note 74. In Wiles v. Williams, 232 Mo. 56, 133 S. W. Rep. 1, 34 L. R. A. (N. S.) 1060, the classification had reference to a particular Federal census which confined it to certain counties. 25 R. C. L. 834.

Bloss v. Lewis, 109 Cal. 493, 41 Pac. Rep. 1081, cited for respondent, does not conflict with views herein expressed, as there the constitution required a classification "according to duties." In Philadelphia County v. Sheehan, 263 Pa. 449, 107 Atl. Rep. 14, and Davis v. Clark, 106 Pa. St. 377, the court held classification to be arbitrary. In the first case the holding is contrary to the decision of this court in Ex Parte Wells, 21 Fla. 280. In the other case, as well as Edmonds v. Herbrandson, 2 N. D. 270, 50 N. W. Rep. 970; Nichols v. Walter, 37 Minn. 264, 33 N. W. Rep. 800; State v. County of Sauk, 62 Wis. 376; 22 N. W. Rep. 572, and Darcy v. City of San Jose, 104 Cal. 642, 38 Pac. Rep. 500, the statutes in effect permanently and arbitrarily excluded some counties or towns from the operation of a statute required to be general in its scope. In all these cases it was conceded that proper classifications could be made without destroying the required generality and uniformity of a statute. Other cases cited for respon-

dent are controlled by peculiar organic provisions not applicable here, or are not in conflict with this opinion.

Laws are intended to be utilized for governmental purposes, and it is the duty of the courts to ascertain and effectuate the valid legislative intent as expressed in statutes. Appropriate rules of construction may be invoked to aid in ascertaining the intention of the law-making power when the language used is ambiguous; but technical rules should not be applied when they defeat the manifest lawmaking intent that appears from a consideration of the context and purpose of an enactment. The context and purpose of Section 5 of Chapter 8497 clearly indicate an intent that the rule by which an invalid severable portion of an enactment may be disregarded and the remainder enforced to accomplish the main legislative object, shall be applied to the statute; and there is nothing to indicate an intent to limit or modify the rule in its application to the statute.

Section 5, Chapter 8497, Acts of 1921, is as follows: "Should any section of this Act be held inoperative or void, or should its application to any official be held inoperative or void, the same shall not affect the legality or applicability of the balance thereof."

By this section of the Act it is expressly provided that "should its application to any official be held inoperative or void, the same shall not affect the legality or applicability of the balance thereof." This clearly covers any portion of the Act that may be invalid; and even if the proviso to Section 1 is invalid as to the respondent, the statute itself expressly provides that such invalidity "shall not affect the legality or applicability of the balance" of the section or of the act. See Public Utilities Commission of the District of Columbia v. Potomac Electric Power Company and Washington Railway & Electric Co., U. S. Sup. Ct., decided April 9, 1923; Board of Trade of City of Chi-

cago, John Hill, Jr., et al. v. Edwin A. Olsen, U. S. attorney for the Northern District of Illinois, Henry C. Wallace, Secretary of Agriculture, and Arthur C. Leuder, United States Postmaster at the City of Chicago, U. S. Sup. Ct. decided April 16, 1923.

It is not contended or even suggested in this case that the second and third proviso to Section 1, or any other portion of Chapter 8497 violates any part of the Federal Constitution. Chapter 8497 prescribes prospectively the compensation of county officers, but does not regulate the fees that may be collected by county officers. Section 20, Art. III of the State Constitution does not require laws prescribing the compensation of county officers to "be general and of uniform operation throughout the State"; and even if the constitution does so provide, classifications do not violate the organic provision and the classification in the second and third provisos to Section 1 is not invalid, particularly in view of the express provision of Section 6, Art. VIII of the Constitution that county officers' "compensation shall be prescribed by law," and no limitation is imposed upon such express power; and even if there is any ground for invalidating the second and third provisos to Section 1 of the statute, Section 5 expressly provides that the remainder of the Act shall be enforced; and the courts have no power to nullify a valid legislative intent as expressed in a duly enacted statute.

In giving effect to the constitution as the controlling law, the courts are authorized to render inoperative statutory provisions that conflict with some provision of the constitution; but the courts have no authority to disregard or to render nugatory an enactment expressing a legislative intent that does not conflict with organic law. The valid intent of a statute is the essence of the law. Section 5 of Chapter 8497 specifically expresses a legislative design and

purpose that if any provision of the Act cannot be validly applied in determining the compensation of any county officer, then it is the legislative intent that the other portions of the statute shall be applied in ascertaining the compensation to be allowed to such officer. This expresses a valid legislative intent with reference to the operation of the statute, and the courts are not authorized to nullify the valid intent of the statute.

A peremptory writ should be issued.

## On Rehearing.

ELLIS, J.—In February, 1923, the Attorney General obtained an alternative writ of mandamus directed to W. Roger Watkins as Clerk of the Circuit Court for Hillsborough County, to require him to render to the Board of County Commissioners for that county a sworn statement showing in detail the expenses of his office, fees and commissions collected, and the gross and net income thereof for the year ending December 31, 1922, under the provisions of Chapter 8497, Laws of Florida, 1921.

The return challenged the constitutionality of the Act.

In an opinion delivered by Mr. Justice BROWNE this court in April, 1923, held the act to be invalid and denied a peremptory writ. The decision was by a divided court; Mr. Justice WHITFIELD and Mr. Justice WEST dissenting.

The Attorney General applied in May, 1923, for a rehearing, which was granted.

Between the date the opinion was filed and the date when the petition for a rehearing was filed the Legislature, by Chapter 9280, approved May 7th of that year, enacted a law providing that henceforth the Supreme Court should consist of six justices instead of five, and that when the act became effective the Governor should appoint an addi-

tional justice to hold office until the election and qualification of his successor at the ensuing general election. Following that act of the Legislature the Governor appointed Hon. Glenn Terrell, on the 15th day of May, 1923, to be Justice of the Supreme Court.

It was urged by the Attorney General that as this court had recently upheld the constitutionality of Chapter 8497, referring presumably to the case of State v. Shepard, 84 Fla. 206, 93 South, Rep. 667, and that as the newly appointed justice had not heard the argument in the instant case a rehearing should be granted that he might participate in the decision involving the constitutionality of the Act.

It was considered by this court that as the constitutionality of an act of the Legislature was involved in the instant case it was consistent with the spirit of our institutions and in harmony with the course ever pursued by this court, to endeavor to have the fullest discussion possible before the entire court upon a constitutional question, which always involves the power of a coordinate branch of the government and is a question which when presented to the Supreme Court should be met with even meticulous care and considered in the light of all available information, that the petition for a rehearing should be granted.

It is unnecessary for this court to deny the charge sometimes made that the court is too ready to declare an act of the Legislature to be repugnant to the constitution, because the record of the court, the history of such litigation and the number of acts held to be invalid in comparison with the number actually passed by the Legislature completely expose the inaccuracy of such assertions.

It may be as well at this point to call attention to the fact that this Court did not in the case referred to above, viz.: State *ex rel.* Buford, Attorney General v. Shepard,

decided Chapter 8497 Acts of 1921, to be constitutional. Much was said by the learned writer of the opinion in support of its validity, but what the Court decided was that the peremptory writ should be awarded, not because the act was valid, all acts of the Legislature are presumed to be valid until the contrary is shown beyond a reasonable doubt by one whose interests are affected by the alleged invalid provisions, but because the respondent was not within the classification based on population *"since he is an officer in a county of less than 100,000 population, and he cannot contest the validity of that classification when it does not invalidate the classification he is in."* (Italics mine.)

As to the validity of the Act, in so far as it related to the classification in which the respondent *was* placed, this Court said, speaking through Mr. Justice WHITFIELD: "In prescribing compensation for county officers from fees collected by them, classifications may be based on the total receipts having reference to the amount of business done in a county, the fees collected being uniform. *Such a classification is* manifestly just, reasonable and practical in view of the subject. The fees to be collected are uniform in every county of the State; the amounts allowed by the statute to be retained by the officers are general as to an appropriate classification when predicated upon the *volume* of collections made, and are uniform throughout the State wherever such classification exists. The *classification contained* in the *two provisos* in *Section 1,* Chapter 8497, is based upon *population* and, on the *showing* made, it *may* not *have* a *reasonable relation* to the *business done* or to the *volume* of *fees collected, which indicate that the classification may be arbitrary, since it has no relation to the amount* and *responsibility*

14—Vol. 88.

of *services* for which the *compensation* is *intended* to be *prescribed* and *fixed.*'' (Italics mine).

In this decision Messrs. Justice TAYLOR, ELLIS and WEST concurred.

The official report of the Florida Supreme Court deci-'sions does not show that the writer participated in this decision. That is an error as the writer did participate ,in the decision and the fact is shown by the records on .file in this Court and the report of the decision in the Southern Reporter, Vol. 93, p. 667.

So what the Court decided in the Shepard case was that the Legislature had power in prescribing compensation for county officers from fees collected by them, to make classifications of such officers based on the total receipts of fees collected by them, the same having reference to the amount of business done, and the fees collected being uniform. That the respondent, Shepard, not being in the classification defined by the second proviso of the section, was not affected by such proviso and could not question its validity. The effect of the invalidity of such proviso upon the entire Act was not considered.

In the instant case Watkins, the Clerk of the Circuit Court for Hillsborough county, is within the second proviso of Section 1 of the Act and therefore may raise the question of its validity and the resultant effect of such invalidity upon the entire Act. So this Court held in the first opinion in the instant case, speaking through Mr. Justice BROWNE.

It would be a work of supererogation to review the reasoning of that opinion. It is clear, cogent, forceful and in perfect harmony with the dictum in the Shepard case, in so far as it is there intimated that a classification based on population for the purpose of prescribing compensation for county officials is arbitrary, since it has no rela-

tion to the amount and responsibility of services for which compensation is intended to be prescribed and fixed.

The Court held that as the second proviso of the Act was invalid for the reason given it destroyed the validity of the entire section, because it was the evident purpose of the Legislature, as indisputably shown by that section, to limit the compensation of county officials to $6,000.00 per year, except in counties having 100,000 or more population, but as to officers in such counties the compensation should be limited to $7,500.00 per year. That purpose was destroyed, that intention of the Legislature annulled when the second proviso was eliminated. Eliminating Section 1, nothing remains in the Act to which the other sections are applicable.

Secion 4 of the Act provides that it "shall be the duty of each and every such officer, to pay on or before the first of each month of January hereafter, into the General Revenue Fund of their respective counties, *all moneys* in *excess* of the sums to which they are under the provisions of this Act entitled."

Section 2 defines the term "net income" to mean the "residue of the income from such office after deducting all reasonable expenditure for the salaries of clerks and assistants and necessary expenditures for the proper operation of said office."

Section 3 requires the officers to make quarterly statements showing in detail the expenses of the office, the fees and commissions collected, and the gross and net income thereof, and provides for exceptions to be taken on such report by the Board of County Commissioners. But the purpose of that section was to provide a means for ascertaining the compensation to which the officers would be entitled under Section 1 and the amount to be paid over under the provisions of Section 4. But with Section 1

eliminated from the Act the compensation of the county officials is not fixed at any definite net sum.    Sections 2, 3 and 4, therefore, become meaningless, inoperative and void in view of the purpose and subject of the Act as expressed in the title.

The opinion by Mr. Justice BROWNE was concurred in by Mr. Chief Justice TAYLOR and the writer; Messrs. Justices WHITFIELD and WEST dissenting.    The opinion was filed on April 23, 1923.

On the 2nd day of May, 1923, the Governor approved an Act entitled: "An Act to fix and determine the compensation and remuneration of all County Officials in the State of Florida now paid in whole or in part by fees, salary or commissions or by one or more of said methods of payment; to require reports by said officials; to provide for the duty of the Board of County Commissioners in reference thereto; to provide for the distribution of moneys collected hereunder, and to provide for the auditing of the accounts of said offices."

This Act was a complete revision of the entire subject, even preserving the sectioning of the first Act, Chapter 8497, *supra*, resting the compensation of county officials upon the basis of the amount of business done as shown by the fees collected and limiting the amount of income to six thousand dollars per year.

It is contended by the Attorney General that Section 5 of Chapter 8497, which provides that if any section of the Act be held inoperative or void, or should its application to any official be held inoperative or void, the same shall not effect the legality or the applicability of the balance thereof, renders the remainder of section 1, after eliminating the second proviso, valid and operative.

There is no doubt that such provisions in a statute are valid but with restrictions.    They cannot serve to vest

legislative power in the courts. The law making function of a State is in the legislative branch of the government and cannot be delegated to the judicial branch. The effect of such provisions in a statute is merely to affirm the rule which has ever been applied by this court independently of such provisions. The rule is: that part of a statute may be unconstitutional and void without affecting the validity of other parts, if they are not dependent upon each other. That is to say, if the valid portions are capable of being executed without the invalid part in accordance with the purpose of the legislature. See Hart v. Bostwick, 14 Fla. 162; Bucky v. Willard, 16 Fla. 330; State *ex rel.* Attorney General v. Dillon, 32 Fla. 545, 14 South. Rep. 383, 22 L. R. A. 124; State *ex rel.* Moodie v. Bryan, 50 Fla. 293, 39 South. Rep. 929; State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367, Ann. Cas. 1918A 138; Lainhart v. Catts, 73 Fla. 735, 75 South. Rep. 47; Ex parte Wells, 21 Fla. 280.

But if an invalid section or part of a statute is of such import that the other sections or parts without it would cause results not contemplated or desired by the legislature then the entire statute must be held inoperative. See State v. Patterson, 50 Fla. 127, 39 South. Rep. 398, 7 Ann. Cas. 272; Hayes v. Walker, 54 Fla. 163, 44 South. Rep. 747; State *ex rel.* West v. Hilburn, 70 Fla. 55, 69 South. Rep. 784; State *ex rel.* Buford v. Spencer, 81 Fla. 211, 87 South. Rep. 634.

To hold that Section 5 of the act extends the rule, as announced above, is to affirm that the legislature may delegate to the courts the power to declare which of two propositions, interdependent yet inconsistent, embraced in one rule, shall be the law. Such power is legislative.

In interpreting a statute the legislative intention is the primary consideration. See Tyles v. Hyde, 60 Fla. 389,

52 South. Rep. 968; State *ex rel.* Johnson v. Patterson, 67 Fla. 499, 65 South. Rep. 659; State *ex rel.* Triay v. Burr, 79 Fla. 290, 84 South. Rep. 61.

But it is sought by the authority of Section 5 to do more than enforce one alternative proposition. It is desired to enlarge one of such propositions so that it will embrace a class excluded by its provisions.

The proposition is embraced in Section 1 of the act, which shows the sole purpose and intention of the legislature to be the regulation of compensation for the services of county officers upon a commission or percentage bases, and such compensation to be determined by the class in which the particular officer may be placed. The classification was held to be unreasonable, arbitrary and invalid. It cannot be maintained that the court has the power to eliminate the classification and enforce the statute as applicable to all county officers, without classification. Such was not the purpose to which the legislative mind was directed when the proposition was under consideration and it is impossible for any one to say that the valid portion of the act, if any part of it is valid, would have been enacted without the obnoxious proviso in the first section.

Section 1 prescribes two separate rules of compensation for the services of county officials. As said by counsel for the respondent: ''One rule is just as much the legislative will as the other.'' The officials in one class are affected by one rule while the officials in the other class are affected by a different rule. For this court to announce the legislative purpose to have been that all county officials should be affected in the matter of their fees or compensation by the first rule because the second rule is void is to impose the judicial will upon that of the legislative.

But taking the other angle of the proposition, and asserting that the first rule applies only to such counties as have

a population less than that prescribed by the obnoxious rule, is to announce the validity of a rule in the matter of the regulation of the fees of county officials which is not of uniform operation throughout the State because the rule would not be operative in counties having one hundred thousand population or more. See State *ex rel.* Board of Com'rs of Benton County v. Boice, 140 Ind. 506, 39 N. E. Rep. 64, 40 N. E. Rep. 113; Bray v. Hudson County, 50 N. J. L. 82, 11 Atl. Rep. 135; Township of Lodi v. State, 51 N. J. L. 402, 18 Atl. Rep. 749; Davis v. Clark, 106 Pa. St. 377.

It is urged by the Attorney General, with whom is associated Mr. T. M. Shackleford, Jr., that the respondent, Watkins, was not an official of a county having one hundred thousand population, or more, but on the contrary the petition alleged and the respondent admitted that the Federal census of 1920 showed the population of Hillsborough County to be less than one hundred thousand and no census had since been taken. That in all questions of population the census is conclusive and controlling and no admission to the contrary can be considered.

From this fact, which it is said the court overlooked, it is argued upon the authority of the Shepard case, *supra,* and other authorities that the respondent cannot raise the constitutional question because he is not in the class affected by the void proviso.

The petition for a writ of mandamus alleged the fact in the following language: ''That Hillsborough County, Florida, according to the last Federal census taken in the year 1920, had a population of 87,901, and no official census has been taken since, and your petitioner contends that the result of the said official census is controlling, although your petitioner is informed and believes that

said county has and had in and during the year 1922 a population exceeding 100,000.''

The return of the respondent met the allegation in the following language: ''First. This respondent admits that on January 1st, 1922, he was and at all times since has been and now is Clerk of the Circuit Court of Hillsborough County, Florida, and he admits that said County, according to the last Federal census taken in the year 1920, had a population of 87,901, and that no official census has been taken since; and further admits that Hillsborough County has and had in and during the year 1922 a population exceeding 100,000, and in connection with a bond issue in the year 1922 the County Commissioners of said County stated and represented, as an inducement to bond buyers to purchase the said bonds, that the population of the said County in the year 1922 was 110,000.''

Yet this court issued the alternative writ. In that state of case the Attorney General moved for a peremptory writ.

The point urged by counsel for the State was considered by this court, however, and by a majority of the court definitely held that from the pleadings it appeared that the County of Hillsborough had a population of one hundred thousand or more. Mr. Justice Whitfield, in his dissenting opinion, in which dissent Mr. Justice West concurred, although it does not appear that he concurred in the opinion, definitely presented the point. So it was not overlooked by this court, but, on the other hand, considered and decided adversely to the contention of counsel, which is that the official census is controlling and no admissions in the pleadings can be taken contrary to the fact as shown by the official census.

This ground of the petition for a rehearing, therefore, is not based, as all grounds in such petitions should be,

on a fact overlooked by the court, but it rests upon the assertion that the court erred in the rule of law applied.

It is true that the courts will take judicial notice of the contents of the official census reports, in so far as they show the population of the different subdivisions of the State. 7 Ency. of Evidence, p. 986.

This court has also held that a fact which the law does not allow to be proved is not admitted by a demurrer to a pleading alleging or averring such a fact. See Byrne Realty Co. v. South Florida Farms Co., 81 Fla. 805, 89 South. Rep. 318; Amos v. Gunn, 84 Fla. 285, 94 South. Rep. 615.

In the latter case it was said that the point in pleading was well established in this State that allegations of fact not susceptible of proof are not admitted by a demurrer to a pleading in which such allegations appear.

The last Federal census was taken in 1920. The act under consideration was passed in 1921 and prescribes no rule by which the population of counties may be ascertained that they may be classed in the second proviso. If it was the purpose of the Legislature that the classification should be fixed only by the Federal or State census, then no county, other than the county of Duval with a population shown to be one hundred thousand, could be placed in the class designated by the second proviso until the next census a decade thereafter, although, many counties in this rapidly growing State might within that time acquire such a population and thus be in fact within the letter of the proviso.

It was considered that as the purpose of the act was that it should at all times in the future apply to conditions as they might exist, any county might come at any time within the class defined by the second proviso. Such seemed to be the meaning of the language of the opinion

in the Shepard case which was as follows: ''Chapter 8497 operates uniformly throughout the State upon all similar conditions as classified in the act, and all of its provisions will be applicable to every county of the State as the *conditions therein* develop as contemplated by the law. The law is 'general and of uniform operation throughout the State since the conditions on which the law operates may develop in all the counties. As *similar conditions are developed* in all the counties of the State, the law will uniformly operate in each and all of them.''

Similar language was used in the case of State *ex rel.* Buford, Attorney General, v. Daniel *et al.*, 87 Fla. 270, 99 South. Rep. 804, in which the court had under consideration Chapter 9274 Laws of Florida 1923 entitled ''An Act creating a county welfare board for each county having a population of over one hundred thousand,'' etc. The first section of which provided that ''There is hereby created a county welfare board in each county of Florida having a population of over one hundred thousand according to the *last* Federal census.'' The objection that the act was local and obnoxious to the provisions of Sections 20 and 21 of Article III of the Constitution was met by the statement that the law was ''potentially applicable throughout the State, in that any county may acquire a population of over 100,000, though only one county may now be in that class. The provision 'according to the last Federal census' is progressive and has reference to each Federal census as it occurs.''

It is not at all clear by what process of reasoning legislative acts may be upheld which deal with cases enumerated in Section 20 of Article III of the Constiution by legislation which is admittedly local and special in its application at the time of the enactment and continues so for a decade at a time until all the counties of the

State acquire the population which entitles them to enjoy the benefits of the legislation.

So it was considered that the allegation in the petition, admitted by the return, that Hillsborough County had in 1922 a population greater than one hundred thousand was not the "allegation of a fact not susceptible of proof."

In the view we take of the case however this point is not material because the respondent, Mr. Watkins, is affected by the provisions of the Act whether he is an official in a county having a hundred thousand population or not. He is Clerk of the Circuit Court for Hillsborough county and it is proposed by the Act to "regulate the fees" of such office by changing the compensation from the fees prescribed by law to a net income not to exceed a certain sum and a commission on the remainder, the total to be received not to exceed a certain maximum sum. His compensation as Clerk of the Court is affected by this rule, which he urges is not of uniform operation throughout the State in that at least one county is exempt from the rule and there is no schedule by which the "net income" of the offices in all the counties to which the rule applies may be determined. In two or more counties the gross income from the office of clerk may be approximately the same but the net income be widely different, depending upon the whim, caprice or judgment of the different occupants of the offices in expending the gross income in salaries of assistants.

In such case, although the same services practically were rendered and the same volume of business done, the compensation received would be different in one case from 'hat of another.

A person affected by the provisions of an act in person or property may raise the question of its validity. See 6 R. C. L. 89; Jones v. Black, 48 Ala. 540; Hooker v. Burr,

194 U. S. 415, 48 L. Ed. 1046, 24 Sup. Ct. Rep. 706; 8 Cyc. 787; 12 C. J. 763; Savage v. Jones, 225 U. S. 501, 56 L. Ed. 1182, 32 Sup.. Ct. Rep. 715.

The respondent, as Clerk of the Circuit Court, to which office he had been elected, was under the statute as it existed before the passage of Chapter 8497 Laws of Florida 1921, entitled to receive as his compensation for the services rendered by him in that office, certain fees, which in the course of a year amounted to a certain sum of money. The Act of which he complains will, if enforced, take from him a portion of such fees and require him to make certain reports of the gross income of the office expenses incurred in paying assistants and pay over to the county the excess of net income over a certain sum.

The office of Clerk of the Circuit Court is a constitutional county office and the term of office is four years. The powers, duties and compensation are required to be fixed by law. Article VIII, Section 6, Constitution.

The Legislature is inhibited from regulating the fees of any county officer except by statutes that are general and of uniform operation throughout the State. Article III, Sections 20 and 21, Constitution.

The difference in meaning between the words "compensation" and "fees" is that the latter is one phase of the former's meaning. When it is decided to fix a county officer's compensation by fees the Act must be general and of uniform operation.

It is a general principle that when an office with a fixed salary has been created and a person duly appointed and qualified and who has entered upon the discharge of his duties, he is entitled during his incumbency to be paid the salary prescribed by statute. The right is in the nature of a contract right. Where no other remedy to enforce pay-

ment is provided by statute the right may be enforced by mandamus. 29 Cyc. 1429.

While an office is not property, yet the right to office is a substantial right and may be enforced by the proper remedy. Blackstone says offices are a right to exercise a public or private employment and to take the fees and emoluments thereunto belonging. See 1 Sharswood's Blackstone's Commentaries, bottom page 420-421.

A statute, therefore, which purports to regulate the fees of county officers, incumbents of such offices as are created by the Constitution, the compensation being already fixed by *law* upon a fee system, is a statute affecting the rights of such officers who have been duly appointed or elected and qualified and who have entered upon the discharge of their duties.

The respondent's rights being affected by the provisions of the act, in so far as it relates to counties of less than one hundred thousand population, he may raise the question that the second proviso of Section 1 invalidates the entire act, although he may not be in the class designated by the proviso. See State *ex rel.* Clarkson v. Phillips, 70 Fla. 340, 70 South. Rep. 367; Stinson v. State, 63 Fla. 42, 58 South. Rep. 722.

In so far as the Shepard case, *supra,* is not in harmony with this doctrine the same is overruled.

It is also the opinion of the majority of this court that the so-called "second proviso" to Section 1 of Chapter 8497, *supra,* relating to counties of one hundred thousand population, or over, is not a "proviso" within the meaning of that term as defined by this court. It does not perform the function of limiting or restraining the language employed by the legislature. It excepts nothings from the enacting clause of the act. See Southern Bell Telephone & Telegraph Co. v. D'Alembert, 39 Fla. 25, 21 South. Rep.

570; State *ex rel.* McQuaid v. Commissioners of Duval County, 23 Fla. 483, 3 South. Rep. 193; State *ex rel.* Moodie v. Bryan, 50 Fla. 293, text 392, 39 South. Rep. 929.

Upon the contrary the act being one to fix and determine the compensation and remuneration of all county officials, not by abolishing the fee system and prescribing a definite compensation, but by retaining the fee system and limiting the rights of the county officials to the fees of their offices, should be general and of uniform operation throughout the State, and the so-called proviso merely provides a different rule under which officers in counties of one hundred thousand population may be compensated and remunerated by the method prescribed. The court taking judicial notice of the contents of the Federal census of 1920 knows that there is one county in the State to which the rule first prescribed does not apply and to which the second does apply. A law which excepts one county from its operation is as much a local law as if it excepted all but one.

The act was designed to accomplish one single object, both the valid and invalid portions contribute to that end which cannot be accomplished unless all parts of the act function in harmony. If one part of it therefore is void the end desired cannot be accomplished, so the entire act must fail. See Darby v. City of Wilmnigton, 76 N. C. 133; 6 R. C. L. 127; State *ex rel.* Boyd v. Deal, 24 Fla. 293, 4 South. Rep. 899.

In one respect, at least, the act, Chapter 8497 *supra,* is not unlike Chapter 7334 Acts of 1917, entitled "An Act Fixing the Compensation of all County Officials Now Paid in Whole or in Part on the Basis of Fees or Commissions," which this court in State *ex rel.* Buford v. Spencer, 81 Fla. 211, 87 South. Rep. 634, held to be invalid. In that opinion it was pointed out that the phrase "net income" was uncertain in meaning, but assuming it to mean the "res-

idue after deducting from the gross income, the compensation of the deputies, clerks or assistants'' the act vested in the county commissioners the power to ''fix the number and compensation of such deputies, clerks or assistants''; thus practically enabling the county commissioners to raise or lower the compensation of county officers instead of its being fixed by law as required by the constitution.

Giving to the phrase ''net income'' as used in Chapter 8497, *supra,* the same meaning, the county officials, themselves, fixing the number and compensation of their own deputies, clerks and assistants, would have the power in smaller counties, at least, to regulate their own compensation within limitations and in other counties to prevent any excess being paid into the General Revenue Fund of their respective counties. The definition of ''net income,'' as given by Section 2 of the act, adds little, if anything, to the certainty of the rule under which the county officials were to be compensated. The term ''reasonable'' is, itself, capable of no definition that would render the rule, for ascertaining what surplus should be paid into the General Fund, certain in all the counties and make it operate uniformly throughout the State.

The conclusion of three members of the Court, Mr. Chief Justice TAYLOR and Messrs. Justices ELLIS and BROWNE, is that the respondent may question the validity of the act; that the so-called second proviso in Section 1 is void; that it is in fact not a proviso, but a separate and independent rule forming part of a method for the compensation of county officials based on fees and the commissions thereon, and the creation of a surplus fund from the income of the offices to be paid into the general fund of the respective counties; that the act neither in its entirety nor with the so-called ''proviso'' eliminated operates uniformly throughout the State; that it is local in its purpose and applica-

tion when considered either with or without the proviso; that it violates the mandate of the 20th and 21st Sections of Article III of the Constitution, and that Chapter 9270, Laws of Florida, 1923, is a complete revision of the entire subject.

The court, however, is equally divided on the question of the unconstitutionality of Chapter 8497, *supra,* and the effect of Chapter 9270, *supra.* Messrs. Justices WHIT-FIELD, WEST and TERRELL being of the opinion that the second proviso of Chapter 8497, *supra,* is a legal classification by population, that the act is a valid general law and is not repealed by Chapter 9270, *supra,* which amends and continues in force the former act.

After several conferences by the Justices of this Court, there appears to be no likelihood of an agreement by a majority of the Court upon the proposition that Chapter 8497 is invalid. The first decision of this Court in this case, filed April 28, 1923, is therefore recalled and a peremptory writ of mandamus is, therefore, hereby awarded.

BROWNE, J.—Believing the act to be unconstitutional, I dissent from judgment awarding a peremptory writ of mandamus.

WHITFIELD, J.—In State *ex rel.* Buford v. Shepard, 84 Fla. 206, text 220, 93 South. Rep. 667, this court in passing upon the constitutionality of Chapter 8497, Acts of 1921, held that ''the provisions of the act'', except the proviso to Section 1, which was not involved in the case, ''are reasonable, complete and appropriate regulations * not shown to be violative of organic law;'' and that ''If the proviso to Section 1 is based on an arbitrary and unreasonable classification it does not, in view of Section 5 of the Act, render invalid the other portions of the Act.'' Page 219.

Section 5 of the Act is as follows: "Should any Section of this Act be held inoperative or void, or should its application to any official be held inoperative or void, the same shall not affect the legality or applicability of the balance of the Act."

The main opinion states the rule to be: "that part of a statute may be unconstitutional and void without affecting the validity of other parts, if they are not dependent upon each other. That is to say, if the valid portions are capable of being executed without the invalid part in accordance with the purpose of the legislature." In this case the purpose of the Legislature is *expressed* in the act and does not need to be developed from implications. That expressed purpose is that if any section of the act "be held inoperative or void or should its application to any official be held inoperative or void, the same shall not affect the legality or applicability of the balance" of the act. The elimination of the proviso to section one, if it be invalid, would not "cause results not contemplated or desired by the legislature" because the statute itself expressly provides that if a part of the act be held invalid or inoperative "the same shall not affect the legality or applicability of the balance" of the Act.

This shows the legislative intent that valid portions of the Act shall be enforced even though that would eliminate one of the classifications of the Act and place the officers of that class in another class, the law being capable of enforcement with the second and third provisos to Section 1 eliminated. This does not "delegate to the courts the power to declare which of two propositions * shall be the law." The statute itself in effect provides that such of its provisions as are valid "would have been adopted even if the legislature had been advised of the invalidity of part" of the Act (Hill v. Wallace, 259 U. S. 44, text

71, 42 Sup. Ct. Rep. 453) and also that the valid portions of the Act shall be enforced and that the valid provisions shall be applicable to the entire subject of the enactment. The legislature has in the Act itself declared that it intends its valid portions to be the law on the subject that is covered by the Act. See Board of Trade of City of Chicago v. Olsen, 262 U. S. 1, text 42, 43 Sup. Ct. Rep. 470; Keller v. Potomac Electric Power Co., 261 U. S. 428, 43 Sup. Ct. Rep. 445; 63 Fla. 337; 31 Fla. 340; 73 Fla. 735.

The proviso to Section 1 of the Act is obviously severable and· its elimination if illegal, would leave the remainder of the Act complete and enforceable. See 179 U. S. 472; 70 Fla. 340; 53 L. R. A. 837.

Chapter 8497 is a general law. See State *ex rel.* Buford v. Daniel, 87 Fla. 270, 99 South. Rep. 804; Ex Parte Wells, 21 Fla. 280; Collier v. Cassady, 63 Fla. 390, 57 South. Rep. 617.

The classification of the proviso to Section 1 of Chapter 8497 of "counties of One Hundred Thousand (100,000) population or over," clearly relates to the population as shown by an official census. See *In re* Sewer Assessment for City of Passaic, 54 N. J. L. 156, 23 Atl. Rep. 517; Lewis v. Lackawanna County, 200 Pa. 590, 50 Atl. Rep. 162. The respondent in this case is not in the 100,-000 population class since Hillsborough County has 87,901 as shown by the last official census; and the allegation of the alternative writ that the "petitioner is informed and believes that said county has  *  a population exceeding 100,000" does not establish the fact for the purposes of the statutory classification, even though the respondent by his return "admits that Hillsborough county has  *  a population exceeding 100,000." The records of the

official census and not pleadings control. The proviso in Section 1, Chapter 8497, is not invalid.

' An Act of the Legislature relating to counties of a certain class, general in its terms and founded upon a proper and legitimate basis of classification, is general and not special legislation, though but a single county is embraced within the class affected by the legislation. Givens v. County of Hillsborough, 46 Fla. 502, 35 South. Rep. 88.

Classifications of counties for governmental purposes based upon population is permissible in enacting general laws. State ex rel. Buford v. Daniel, 87 Fla. 270, 99 South. Rep. 804.

Classifications based upon population in regulating the compensation of officers are proper and legal. See Stone v. Wilson, (Ky.) 39 S. W. Rep. 49; State ex rel. Anderson v. Sullivan, 72 Minn. 126, 75 N. W. Rep. 8; Douglas County v. Frank, 60 Neb. 327, 83 N. W. Rep. 74; Freeholders of Hudson County v. Clarke, 65 N. J. L. 271, 47 Atl. Rep. 478.

Many statutes of this State classify the counties by population for the purpose of fixing the fees and compensation of county officers. Chapter 7886, Acts of 1919, fixes the fees of sheriffs according to whether a county has more or less than a population of 40,000. Chapter 9254 and following Acts of 1923 fix the compensation of county commissioners according to classifications of counties by population. See also Chapter 8498, Acts of 1921; Chapter 7333 Acts of 1919; Chapters 7877, 7879, 7881, 7882, 7883, 7884, 7885 Acts of 1919.

It is a well settled rule that when a repealing Act reenacts substantially the provisions of the Act repealed, the latter is construed not to be thereby destroyed or interrupted in its operation. Forbes v. Board of Health of Escambia County, 27 Fla. 189, 9 South. Rep. 446, 26 Am.

St. Rep. 63; Florida Cent. & P. R. Co. v. Foxworth, 41 Fla. 1, 25 South. Rep. 338, 79 Am. St. Rep. 149; 36 Cyc. 1084; 26 Am. & Eng. Enc. Law (2nd ed.) 758; 25 R. C. L. 934.

The second proviso in Chapter 8497 Acts of 1921 is a legal classification by population, the Act is a valid general law and it is not repealed, but is amended and continued in force by Chapter 9270, Acts of 1923.

TERRELL, J., concurs.